UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MALLORY ROBERSON,

    Defendant.

_____/

Case No. 23-cr-20515

HON. MARK A. GOLDSMITH

**OPINION & ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS (Dkt. 20)**

Before the Court is Defendant Mallory Roberson's motion to suppress narcotics seized and statements made by Roberson after officers searched a vehicle in which Roberson was a passenger (Dkt. 20). The Court denies the motion for the reasons set forth below.[1]

**I. BACKGROUND**

Roberson is charged in this case with possession and intent to distribute fentanyl and heroin, in violation of 21 U.S.C. § 841(a)(1). Indictment (Dkt. 14).

On March 20, 2023, a confidential source (CS) informed Drug Enforcement Administration (DEA) special agent James Richmond that an unidentified associate of Donald Travis—later learned by law enforcement to be Roberson—was in possession of a green lunch box containing a kilogram of fentanyl. Gov't Suppl. Br. at 2–4; 3/7/24 Hr'g Tr. at 11–12 (Dkt. 39). The CS further stated that Roberson rode as a passenger in a black Mercedes and that this vehicle

---

[1] In addition to the motion, the briefing includes the Government's response (Dkt. 24) and supplemental brief (Dkt. 41) and Roberson's supplemental brief (Dkt. 42). The Court held a hearing on the motion on March 7, 2024 and continued that hearing on April 15, 2024.

would be parked at a Westin hotel in Southfield, Michigan later that night.  3/7/24 Hr'g Tr. at 13–14.

After locating the vehicle at the Westin hotel on the evening of March 20, DEA agents continued to surveil the vehicle next day.  Gov't Suppl. Br. at 3–4.  That morning, Travis left the hotel in the black Mercedes and stopped at a residence on Beaconsfield Street in Harper Woods, Michigan.  Id. at 4.  While Travis was stopped on Beaconsfield, Roberson exited the residence holding a green lunch box and entered the passenger seat of the Mercedes.  Id.  Agent Richmond then contacted Michigan State Police trooper and canine handler Joshua Olszewski, relayed to him the information gathered from the CS and surveillance, and asked Olszewski to conduct a traffic stop of the Mercedes vehicle.  3/7/24 Hr'g Tr. at 16–17.

Olszewski stopped the Mercedes.  During the stop, Travis and Roberson were asked to exit the vehicle while Olzsewski conducted a dog sniff of the vehicle's exterior.  Id. at 75–76; Def. Suppl. Br. at 2.  Olszewski testified that, during the dog search, the dog exhibited behaviors indicating a narcotic odor near the passenger side of the vehicle.  Gov't Suppl. Br. at 6.  After the dog's apparent change in behavior, Olszewski searched the vehicle's interior.  3/7/24 Hr'g Tr. at 61, 79.  During his search, Olszewski found the green lunch box on the floorboard of the front passenger seat.  Id. at 79.  Lab testing later revealed that the lunch box contained fentanyl analogs and heroin.  Gov't Suppl. Br. at 7; Br. Supp. Mot. at 1.

After finding the narcotics, officers arrested Roberson and Travis.  3/7/24 Hr'g Tr. at 19.  Roberson was brought to DEA headquarters for interviewing.  Id.  Agent Richmond testified that, during his interview with law enforcement, Roberson said that "it was all his and Mr. Travis had nothing to do with it."  Id. at 20.

Roberson moves to suppress the evidence gathered during the March 21, 2023 search of the vehicle and Roberson's statements made during his interview with law enforcement. Br. Supp. Mot. at 1, 4.

## II. ANALYSIS

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." Coolidge v. New Hampshire, 403 U.S. 443, 454 (1971) (punctuation modified). One such exception is the automobile exception, "which allows officers to search a car without a warrant if there is probable cause." United States v. Dixson, No. 23-1400, 2024 WL 2974483, at *3 (6th Cir. June 13, 2024). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion. The court's determination of whether probable cause existed at the time of the search is a commonsense, practical question to be judged from the totality-of-the-circumstances." United States v. Smith, 510 F.3d 641, 647–648 (6th Cir. 2007) (punctuation modified).

The Government offers two independent grounds for arguing that the search was supported by probable cause: (i) the information law enforcement received from its CS, and (ii) the dog's "positive alert" during the traffic stop. Gov't Suppl. Br. at 15. As discussed further below, because the Court agrees with the Government that the information supplied by the CS was sufficient to provide probable cause, the Court need not address the issue of whether the dog alerted to drugs.

### A. Confidential Source

"Probable cause may come from a confidential informant's tip, when sufficiently detailed and corroborated by the independent investigation of law enforcement officers." United States v. Stokes, 742 F. App'x 947, 950 (6th Cir. 2018) (punctuation modified). When assessing whether probable cause exists based on information from a CS, a court must "consider the veracity, reliability, and the basis of knowledge for that information as part of the totality of circumstances evaluating the impact of that information." United States v. Crumpton, 824 F.3d 593, 615–616 (6th Cir. 2016) (punctuation modified). "While independent corroboration of a confidential informant's story is not a sine qua non to a finding of probable cause . . . in the absence of any indicia of the informants' reliability, courts insist" upon "independent police corroboration." United States v. Frazier, 423 F.3d 526, 532 (6th Cir. 2005) (punctuation modified).

Here, the totality of the circumstances of the information received from the CS supplied the Government with probable cause to search the Mercedes. For one, law enforcement's observations corroborated the information provided. As predicted by the source, agents observed a black Mercedes at the Westin in Southfield on the evening of March 20 and observed Travis leave the hotel and drive off in the Mercedes the next morning. See Gov't Suppl Br. at 3–4. Later that day, agents further corroborated elements of the source's information by observing Roberson enter the Mercedes while holding a green lunch box. Id. at 2, 4. This predictive information is the sort of information that courts have found establishes a CS's reliability for purposes of probable cause. See, e.g., United States v. Byrd, No. 23-5116, 2024 WL 2210135, at *8 (6th Cir. May 16, 2024) ("Most importantly, the [confidential informant] gave accurate predictions of [the defendant] and his associate's actions on the date at issue, which corroborated his reliability at the time of the stop."); Illinois v. Gates, 462 U.S. 213, 245 (1983) (concluding that an "anonymous

4

letter contain[ing] a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted" supported the letter's reliability and weighed in favor of probable cause).

In addition to this independent corroboration, information obtained from a source who is known to law enforcement and who has previously aided law enforcement may be sufficiently reliable to support a finding of probable cause. See United States v. Martin, 526 F.3d 926, 937 (6th Cir. 2008) (finding an informant sufficiently reliable where "the confidential informant . . . [was] a known person who . . . previously provided information that resulted in seizure of illegal controlled substances"); United States v. Kinison, 710 F.3d 678, 683 (6th Cir. 2013) (holding that an informant who was known to law enforcement, personally observed criminal activity, and had met with agents three different times was sufficiently reliable).

Here, the Government's CS has provided reliable information in the past. Gov't Suppl. Br. at 2. Agent Richmond testified that the CS has cooperated with the DEA since 2010. 3/7/24 Hr'g Tr. at 10–11. In Richmond's own experience, the source had provided credible and reliable information to the DEA on six occasions. Id. at 11. In addition, as the Government points out, Gov't Resp. at 9, because the source was known to the DEA, and therefore, risked prosecution for making a false report, the source's information is "entitled to far greater weight than those of an anonymous source." United States v. May, 399 F.3d 817, 825 (6th Cir. 2005).

Roberson submits that, because Richmond testified that the source provided information "approximately six times," the source could have assisted the DEA "fewer" than six times. Def. Suppl. Br. at 27. However, Roberson offers no testimony or other evidentiary basis to support this assertion. As Richmond explained, those six occasions included only the instances in which Richmond interacted with the source—the CS may well have assisted law enforcement on other

5

occasions in cases in which Richmond was not involved. See 3/7/24 Hr'g Tr. at 11. If anything, the six occasions cited by Richmond may well be an undercount.

Based on law enforcement's independent corroboration of the information received from the CS and the source's track record of providing reliable information, the Court finds that the information provided from the CS was sufficiently reliable to supply probable cause for the search.

### B. Dog's Sniff-Search Alert

As discussed above, because the Court finds that the CS provided probable cause for the search, it need not address the issue of whether the dog's exterior sniff-search of the vehicle separately provided probable cause to search the interior of the Mercedes. Nevertheless, Roberson argues that the dog's alleged failure to indicate dispelled the probable cause supplied by the CS. Def. Suppl. Br. at 25. The Court disagrees.

Courts have repeatedly held that a dog's failure to alert does not alone dispel already existing-probable cause. See United States v. Wickersham, 344 F. App'x 155, 159 (6th Cir. 2009) (holding that probable cause was not dispelled where a dog initially alerted to drugs despite the fact that the dog failed to alert in a subsequent search); Carter v. Hamaoui, 699 F. App'x 519, 533 (6th Cir. 2017) (holding that, where a dog initially alerts to drugs in a vehicle, the failure of a subsequent dog to alert does not dissipate the probable cause to search that vehicle); United States v. Crow, No. 1:23-cr-8, 2023 WL 6035691, at *9 (E.D. Tenn. July 13, 2023), report and recommendation adopted, No. 1:23-cr-8, 2023 WL 5321074 (E.D. Tenn. Aug. 18, 2023) (holding that, while a drug-sniffing dog's failure to alert is "a factor that must be considered in assessing probable cause," that fact did not dispel the already-existing probable cause based on tips from informants that the defendant was engaged in drug trafficking).

6

Even assuming that an exterior sniff-test of the vehicle did not yield a positive indication of drugs, under the totality of the circumstances, Olszewski had probable cause to search the interior of the Mercedes based on the information received by and the corroboration of the tip from the CS. The dog's alleged failure to alert to the exterior of the Mercedes did not dispel the probable cause derived from the CS. While Roberson is correct that there are cases in which the Sixth Circuit has held that a drug-sniffing dog's failure to alert dispelled suspicion of drug possession, see Def. Suppl. Br. at 25,[2] none of these cases supports Roberson's position.

In Hernandez, officers pulled over the plaintiffs' vehicle and subjected the exterior of the vehicle to a canine sniff search. Hernandez, 949 F.3d at 254. After the dog positively indicated during the exterior search, it failed to indicate again when searching the vehicle's interior. Id. Despite the dog's failure to alert to the interior, officers searched the interior and found drugs. Id. The officer's only basis for probable cause to search for the car was the dog's positive indication to the exterior. Id. Affirming the district court's denial of the plaintiffs' motion for judgment as a matter of law, the Sixth Circuit held that a reasonable jury could conclude that the dog's failure to alert could "dispel[] the probable cause provided by its initial alert to the exterior." Id. at 260.

Unlike officers in Hernandez, here, law enforcement did not rely solely on an exterior sniff-test for probable cause to search the vehicle. Rather, law enforcement relied upon information received from the CS. Whether the dog's exterior sniff search yielded a positive indication of drugs in the car has no bearing on the validity of this separately obtained probable cause.

---

[2] Citing Hernandez v. Boles, 949 F.3d 251, 260 (6th Cir. 2020) (holding that a reasonable jury could conclude that the dog's failure to alert could "dispel[] the probable cause provided by its initial alert to the exterior"); United States v. Davis, 430 F.3d 345, 351 (6th Cir. 2005) (holding that officers violated the Fourth Amendment when they prolonged a traffic stop for an additional hour to call a second drug-detection dog to the scene, after the first dog failed to alert to the defendant's vehicle, because the officers lacked reasonable suspicion to prolong the defendant's detention once the first drug-sniffing dog failed to alert).

Roberson fares no better in his reliance on Davis. In that case, officers had reasonable suspicion to temporarily detain a driver on suspicion of drug possession based on Davis's association with a known cocaine supplier. Davis, 430 F.3d at 351. After a drug-sniffing dog failed to alert to drugs in Davis's vehicle, officers nonetheless continued to detain Davis to permit a second search by a second drug-sniffing dog. The Sixth Circuit held that the officers' delayed detention of Davis's vehicle was unreasonable and "served no investigatory purpose," explaining that the officers' reasonable suspicion to detain a driver dissipated after a drug-sniffing dog failed to alert. Id. at 356.

Davis is unlike this case. While Davis addresses the validity of a continued temporary investigatory "Terry Stop" based on reasonable suspicion following a drug-sniffing dog's failure to alert, it does not address whether a dog's failure to alert dispels probable cause to search a vehicle. Given the information law enforcement obtained from the CS in this case, the dog's alleged failure to alert during a search of the vehicle's exterior did not dispel the probable cause that had already attached.

All told, Roberson's cases fail to support his argument that the dog's alleged failure to positively alert to drugs during an exterior sniff-search of the vehicle dispelled the probable cause stemming from the CS. The Court finds that law enforcement's search of the vehicle was supported by probable cause.

### III. CONCLUSION

For the reasons stated above, the Court denies the motion to suppress (Dkt. 20).

SO ORDERED.

Dated: October 29, 2024 s/Mark A. Goldsmith  
      Detroit, Michigan MARK A. GOLDSMITH  
                                             United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 29, 2024.

                                                           s/Carolyn Ciesla  
                                                           Case Manager